**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 3:16-cr-00068** |
| | ) | **Chief Judge Crenshaw** |
| **ABRAHAM AMOS AUSTIN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

In his Sentencing Memorandum (Doc. No. 97), Abraham Amos Austin requests that his plea of guilty to Count One of the Indictment charging receipt of child pornography between June 12, 2009 and September 10, 2015 be vacated, and that he be sentenced only on Count Two, which charges possession of child pornography on September 11, 2015. In response, the Government has filed a Motion to Dismiss Count Two (Doc. No. 103), leaving the receipt count for sentencing. Having fully considered the arguments of the parties and the applicable law, the Government's motion will be granted.

**I.**

"Possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B) is a lesser-included offense of receipt of child pornography under 18 U.S.C. § 2252A(a)(2)(A)." United States v. Dudeck, 657 F.3d 424, 426 (6th Cir. 2011). After all, "one obviously cannot 'receive' an item without then also 'possessing' that item, even if only for a moment." United States v. Ehle, 640 F.3d 689, 695 (6th Cir. 2011). Because the Fifth Amendment's Double Jeopardy Clause prohibits a defendant from being placed "in jeopardy of life or limb" twice for the same offense, U.S. Const. amend. V, a defendant cannot be sentenced for both receipt and possession of child pornography

1

unless "separate conduct is found to underlie the two offenses," Dudeck, 657 F.3d at 426. See also,

United States v. Jamerson, 536 F. App'x 606, 609 (6th Cir. 2013) (holding that "[i]n light of the

legislative history of the two statutes, the two terms, 'receipt' and 'possession,' are neither

synonymous nor interchangeable," but "the two offenses can stand if separate facts support each of

them"); United States v. Hutchinson, 448 F. App'x 599, 603 (6th Cir. 2012) ("[B]ecause Count Two

alleged both receipt and distribution of child pornography, Ehle dictates that Hutchinson's

possession conviction under Count Three is a lesser-included offense of Count Two unless separate

conduct supported each charge.").

In this case, while the Government "does not concede the defendant's multiplicity

argument," it "does acknowledge that the charges are similar in nature and timing," (Doc. No. 103

at 1), and does not offer proof that "separate conduct" underlies the offenses. Instead, "in the interest

of efficiency," (Doc. No. 103 at 3) the Government requests dismissal of Count Two.

In so moving, the Government begins by pointing out that charging decisions are within the

prosecutor's bailiwick, and quotes the following passage from Jamerson:

> It is well established that prosecutors have broad discretion in charging decisions.
> See Gardenhire v. Schubert, 205 F.3d 303, 319 (6th Cir. 2000). Even when two
> statutes with "identical elements" prohibit the same criminal conduct but provide
> different penalties, the government may prosecute under either statute "so long as it
> does not discriminate against any class of defendants." United States v. Batchelder,
> 442 U.S. 114, 124-25, 99 S. Ct. 2198, 60 L. Ed. 2d 755 (1979). A criminal defendant
> has no constitutional right to choose which penalty he will receive. Id. at 125.
> Because possession is a lesser-included offense of the receipt charge, the penalty for
> possession is less than the receipt of child pornography offense and the government
> has the broad discretion to charge [the defendant] with the offense carrying the
> higher penalty.

(Id. at 2-3, quoting Jamerson, 536 F. App'x at 609). The Government also quotes United States v.

Marshall, 736 F.3d 492, 501 (6th Cir. 2013), which confirms that "[w]hether to prosecute and

whether to charge the greater offense or the lesser-included offense are decisions well within the prosecutor's discretion." (Id. at 2).

Fair enough, but the Government already exercised that discretion back in March 2016 when it chose to ask the grand jury to charge Austin with both possession and receipt of child pornography. See, United States v. Huyck, No. 8:13CR107, 2015 WL 4727462, at *7 (D. Neb. Aug. 10, 2015) ("Under Federal law, the prosecutor's unilateral authority to obtain a dismissal of some counts ends (absent permission of the defendant and the court) at the start of trial."). In the absence of evidence that the charges were based on "separate conduct," that choice proved to be problematic given the Double Jeopardy Clause of the Fifth Amendment, and presents the entirely different question that is now before the Court. Unfortunately, the answer is nowhere near as clear-cut as that suggested by the parties in their briefing.

## II.

The Government relies on three cases: Hutchinson; United States v. Gerick, 568 F. App'x 405 (6th Cir. 2014); and United States v. Mazel, 603 F. App'x 379 (6th Cir. 2015). Each of those cases involved receipt and possession of child pornography and stated that, when this pairing of charges violates the Double Jeopardy Clause, the court must vacate the conviction for possession because it is the lesser included offense. Gerick, 568 F. App'x 405; Mazel, 603 F. App'x at 383; Hutchinson, 448 F. App'x at 604. In doing so, all three cite United States v. DeCarlo, 434 F.3d 447, 457 (6th Cir. 2006) for the more general proposition that, where convictions violate the Double Jeopardy Clause, the conviction for the lesser-included offense is to be vacated, with Gerick even describing this as being "well established" law. Gerick, 568 F. App'x at 408.

In response, Austin points out that all of the cases on which the Government relies for

dismissal of the receipt count are unpublished, and "unpublished opinions are never controlling authority." Fonseca v. Consol. Rail Corp., 246 F.3d 585, 591 (6th Cir. 2001) (citing Salamalekis v. Comm'r of Soc. Sec., 221 F.3d 828, 833 (6th Cir. 2000)). He acknowledges the reference in each case to DeCarlo, a published decision, but argues Decarlo got it wrong.

In DeCarlo, defendant was convicted of interstate travel for the purpose of engaging in illicit sexual conduct, along with interstate travel with intent to have sex with a child younger than 12 years of age. Finding the former charge a lesser included offense of the latter, the Sixth Circuit concluded that convictions on both counts violated the Double Jeopardy Clause, remanded the case, and "instructed" the district court "to vacate the conviction" on the lesser count. DeCarlo, 434 F.3d at 457.

In its substantive discussion, the Sixth Circuit in DeCarlo relied on Rutledge v. United States, 517 U.S. 292 (1996), where defendant was convicted of both conspiring to distribute cocaine as well as conducting a continuing criminal enterprise. The Supreme Court found the conspiracy count to be a lesser included offense, and, thus, one of the two counts "must be vacated." Id. at 307. Rutledge, in turn, relied on Ball v. United States, 470 U.S. 856 (1985), that involved receipt and possession of the same weapon. Finding a double jeopardy violation, the Supreme Court "vacate[d] the judgment of the Court of Appeals and remand[ed] with instructions to have the District Court exercise its discretion to vacate one of the convictions." Ball, 470 U.S. at 865. Because Ball gave the district court discretion as to the count to be vacated, and Rutledge did not mention which count (the greater or lesser included) was to be vacated, Austin argues that the Sixth Circuit erred in DeCarlo by mandating that the lesser-included offense be vacated.

Austin is not alone in his reading of Rutledge and Ball. For example, in United States v.

Fischer, another case involving both continuing criminal enterprise and conspiracy to distribute narcotic charges, the government went "so far as to suggest that the lesser-included offense should be *automatically* stricken, thus denying the district court the discretion to decide which of the two sentences to vacate under Rutledge." 205 F.3d 967, 970 n. 2. (7th Cir. 2000) (emphasis in original) Noting that "[t]he Rutledge opinion itself says nothing about how lower courts should follow its rule," the Seventh Circuit turned to Ball because it "alleviate[d] the double-punishment problem" by leaving it to the district court to decide which conviction to vacate. Id. "Thus, when a defendant is convicted of an offense and a lesser-included offense, the district court should decide which conviction to vacate." Id. Other circuits read Ball and Rutledge the same way. United States v. Maier, 646 F.3d 1148, 1154 (9th Cir. 2011); United States v. Bobb, 577 F.3d 1366, 1372 (11th Cir. 2009).

Still other Courts of Appeal, while citing Ball and/or Rutledge, dictate which count to vacate, much like DeCarlo did. Thus, for example, the Fifth Circuit in United States v. Brito, 136 F.3d 397, 408 (5th Cir. 1998) stated that "is well settled that in cases of double jeopardy arising from the simultaneous charging of a greater and a lesser included offense, we dismiss the lesser included offense," and "[t]he Rutledge decision has not placed this practice in question." See also, United States v. Sellers, 657 F. App'x 145, 148 (4th Cir. 2016) ("We thus reverse the district court's denial of relief on the double jeopardy claim, and remand to the district court with instructions to vacate Sellers' conviction and sentence on [the lesser included count] and to enter an amended judgment omitting that count.").

One way to resolve the seemingly inconsistent approaches would be to surmise that the *appellate* court is exercising the discretion when it directs the district court to vacate the lesser

included offense. This, however, would run afoul of the Supreme Court's observation in Ball that, where a defendant is convicted for the same offense under two separate counts and the evidence is sufficient to support either conviction, "the only remedy consistent with the congressional intent is for the *District Court*, where the sentencing responsibility resides, to exercise its discretion to vacate one of the underlying convictions." Ball, 470 U.S. at 864 (emphasis added).

Another way to reconcile the different approaches among the circuit courts would be to simply accept that, while "the usual practice is to dismiss the lesser included offense, the matter ultimately seems to be one left to the sound discretion of the [District] Court, rather than legally mandated." United States v. Palmer, 902 F. Supp. 2d 1, 11 (D.D.C. 2012). In other words, even though "a long line of authorities direct[s] vacation of the conviction that carries the more lenient penalty when a defendant is convicted of both a greater and a lesser-included offense," United States v. Brown, 701 F.3d 120, 128 (4th Cir. 2012) (collecting cases), "there is no Iron Law that it is the conviction with the lowest penalty that must be vacated." Fischer, 205 F.3d at 971.

**II.**

What other circuits have ruled is really of no moment if there is controlling Sixth Circuit precedent because this Court is bound by that authority. As noted, the Sixth Circuit in DeCarlo, relying on Rutledge "conclud[ed] . . . that the Double Jeopardy Clause requires that [defendant's] conviction of the lesser crime be vacated." 434 F.3d at 457. This should end the matter because DeCarlo is a published decision and "is controlling authority for all subsequent panels . . . absent a reversal by the Supreme Court or an en banc panel[.]" United States v. Churn, 800 F.3d 768, 782 (6th Cir. 2015) (citing Darrah v. City of Oak Park, 255 F.3d 301, 309–10 (6th Cir. 2001)).

However, in Ehle, a post-Decarlo published decision, the Sixth Circuit relied on Rutledge

in finding a "double jeopardy violation in [defendant's] convictions for both receiving and possessing the same child pornography," and then cited Ball for the proposition that "[t]he only constitutionally sufficient remedy in this case is to remand to the district court for it to vacate one of the two convictions in *its* discretion." United States v. Ehle, 640 F.3d 689, 694 (6th Cir. 2011) (emphasis added). To further compound matters, four months later the Sixth Circuit published Dudeck, another case involving both receipt and possession of child pornography. There, the Sixth Circuit found a remand necessary because "it cannot be determined that separate and distinct conduct occurred for each offense." 657 F.3d at 431. If there was no separate conduct, the Sixth Circuit observed, the matter would be "controlled by Ehle," in which case, pursuant to DeCarlo, "the district court shall vacate [defendant's] conviction as to Count Two of the indictment and resentence him[.]" Id. Thus, Ehle left it to the district court to determine which count to vacate, while Dudeck, a case potentially controlled Ehle, directed which count to be dismissed based on DeCarlo.

### III.

As interesting as they are, the Court finds it unnecessary to dive any deeper into these murky waters. Regardless of whether the Court is required to dismiss the lesser included offense, or the Court has the discretion of picking and choosing the one to dismiss, the result is the same – the Court will dismiss Count II alleging possession of child pornography.

### A.

"The choice of which count to vacate is fundamentally a sentencing decision." Maier, 646 F.3d at 1154. "Just as a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution neither is he entitled to choose the penalty scheme under which he will be sentenced." United States v. Batchelder, 442 U.S. 114,

7

125 (1979).

The parties have not cited, and the Court has not found, any cases where a court has chosen to dismiss a receipt count in favor of the possession count. Cf., Fischer, 205 F.3d at 970 (observing in context of continuing criminal enterprise and conspiracy case that the parties and court could not find any case holding "that it was an abuse of discretion for the district court under Rutledge to vacate the lesser-included conspiracy conviction"). Nor have the parties directed the Court's attention to precedent suggesting how a court should best exercise its discretion in choosing between the two.

In Maier, the Ninth Circuit held that "a district court 'should' exercise its discretion to vacate the lesser-included offense, absent unusual circumstances and compelling reasons to vacate the greater offense," on the theory that "[s]uch a rule safeguards against cases where a defendant charged with both possession and receipt/distribution of child pornography pleads guilty to both offenses with the hope that he will be sentenced under the lesser crime." Maier, 646 F.3d at 1154. For its part, the Seventh Circuit has stated that "when the presumption against double punishment requires invalidation of the conviction for either the greater or lesser offense, the choice of which conviction to vacate rests with the sound discretion of the district court," but observed that "it would be paradoxical" for it to reverse a decision to sentence a defendant to less time than he would have received had the government not also charged him with the less serious offense." Lanier v. United States, 220 F.3d 833, 841 (7th Cir. 2000).

## B.

"Possession" versus "receipt" is not a quibble over semantics. Under 18 U.S.C. § 2252(a)(2)(A) conviction for receipt of child pornography carries a mandatory minimum sentence

of five years imprisonment; possession of child pornography does not. This begs the question that

if "one obviously cannot 'receive' an item without also 'possessing' that item," Ehle, 640 F.3d at

895, then what is the difference between the two, and why is one punished more harshly than the

other?

> The Eighth Circuit has offered this explanation:

> [T]he distinction is not meaningless simply because knowing receipt and knowing possession overlap in the *usual* case. Yet the underlying point—that possession necessarily requires receipt (if not production) of the possessed material—merits additional consideration.

> Possession of child pornography, while heinous in its own right, does not necessarily spread the harm beyond the possessor himself, whereas "receiving materials that have been shipped in interstate commerce is conduct more closely linked to the market for child pornography." . . . This closer link to the market and its attendant harms is important because "[a] person who receives these images 'furthers the market ... whether or not the person retains them.'" . . . "Indeed, even a person who receives the images and never gets around to viewing them still causes these harms.'" Possession alone, however, does not necessarily contribute to the market, and "[b]ecause the harms flowing from possession of child pornography differ from those associated with distribution and receipt, differentiating levels of punishment should not be unexpected."

United States v. Wheelock, 772 F.3d 825, 830–32 (8th Cir. 2014) (emphasis in original, internal

citations omitted). The Seventh Circuit has stated the same rationale somewhat differently:

> The puzzle is why receiving . . . should be punished more severely than possessing, since possessors, unless they fabricate their own pornography, are also receivers. The explanation may be that receivers increase the market for child pornography and hence the demand for children to pose as models for pornographic photographs; possessors, at least qua possessors, as distinct from receivers, though most of them are that too, do not. . . . The possessor who creates his own pornography strictly for his personal use is not part of the interstate and international traffic in child pornography, a traffic that not only increases the demand for the production of such pornography but, by virtue of its far-flung scope, makes it extremely difficult to locate, let alone protect, the children exploited by it. Concern with the welfare of the children who are used to create pornography is part of the public concern over child pornography . . . and this makes the receiver a greater malefactor than the possessor.

United States v. Richardson, 238 F.3d 837, 839 (7th Cir. 2001); see also, Ehle, 640 F.3d at 698 ("Congress viewed an individual's 'knowingly possessing' child pornography as a separately punishable offense where the same individual had not also 'knowingly received' the same child pornography," and "the crime of 'knowingly possessing' child pornography was meant as a gap-filling provision, targeting those who 'possessed' child pornography without having also 'received' the same child pornography" through interstate commerce.). In other words, "[b]ecause the harms flowing from possession of child pornography differ from those associated with distribution and receipt, differentiating levels of punishment should not be unexpected." United States v. Sturm, 673 F.3d 1274, 1280 (10th Cir. 2012).

It may be that "the distinction is rather tenuous," Richardson, 238 F.3d at 839, but "[o]nce a person has been convicted of a crime in accordance with constitutional guarantees, determining the severity of his punishment is, in the first instance, a legislative task," United States v. Meirick, 674 F.3d 802, 805 (8th Cir. 2012). "Congress has taken an active role in creating the sentencing scheme for child pornography offenses," United States v. McNerney, 636 F.3d 772, 775 (6th Cir. 2011), and it has chosen to impose a statutory minimum for receivers of such pornography.

By entering a plea of guilty to Count One, Austin admitted to receiving child pornography. He did so with full awareness that the receipt count carried a five year mandatory sentence. That mandatory sentence was set forth in bold font in the Plea Petition (Doc. No. 83), and was confirmed at the plea hearing. Further, during the plea colloquy, Austin was told by the Court that five years was the minimum sentence, he should expect that the sentence calculation would begin with that number as the baseline, and that, while the worst-case scenario was 20 years, the minimum would be at least five years. Austin clearly and unequivocally acknowledged his understanding of the five

year minimum sentence. He is not in a position to argue that his sentence should be less than that.

## C.

Austin has filed a 46-page Sentencing Memorandum (Doc. No.97), together with a 12-page appendix that notes the increased harshness in the sentencing guidelines for child pornography over the years. The Sentencing Memorandum argues that U.S.S.G § 2G2.2 pertaining to child pornography cases wholly overstates the crime in a possession case. Among other things, § 2G2.2 calls for increases based upon the number of images involved, including dictating that videos constitute 75 images. It also increases sentences where (1) the material involves prepubescent minors; (2) the material portrays sadistic or masochistic conduct; and (3) a computer is used. Austin argues that virtually all child pornography cases now involve computers given the Internet, and this ease of access has resulted in those types of enhancement applying in virtually every case.

The arguments raised by Austin have become the norm in child pornography cases and this is hardly surprising. Section 2G2.2 has been described as "an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results." United States v. Dorvee, 616 F.3d 174, 188 (2d Cir. 2010). Indeed, "[r]ecognizing the flaws in this guideline, judges across the country have declined to impose sentence within the range it recommends." United States v. Diaz, 720 F. Supp. 2d 1039, 1041 (E.D. Wis. 2010) (collecting cases); see also United States v. D.M., 942 F. Supp. 2d 327, 351 (E.D.N.Y. 2013) (collecting authority for the proposition that child pornography Guidelines are entitled to little deference). That said, the Sixth Circuit has held that it will "scrutinize closely" a district court's conclusion to disagree with § 2G2.2 on policy grounds. United States v. Bistline, 665 F.3d 758, 761 (6th Cir. 2012).

Buried in the Sentencing Memorandum (at page 45) is Austin's request that the Court vary

downward from the advisory guideline range of 97 to 121 months under the 2004 Guideline Amendment, to 6 to 12 months, which would be the original guideline range under the 1991 Amendments. At the low end of the guideline range this would result in an 87% to 93% reduction. That can only be achieved if the receipt count is dismissed. Otherwise, Austin is looking at a minimum sentence of 60 months, which itself would be a significant (38%) departure from the low end of the guidelines.

Despite Austin's best efforts to put a gloss on it, he did not stumble across child pornography and, curiosity piqued, make the mistake of keeping it, nor was he a mere casual purveyor of child pornography. He actively sought out such pornography for many years, if not decades. According to statements he made to investigating agents, he began viewing child pornography a couple of times a week when he was around 20 (he is now 39), meaning that his interest continued for almost 20 years until he was caught. When doing so, he visualized himself having sexual intercourse with the child depicted, and would masturbate. While he has denied making some of those statements, he cannot deny that, according to the Indictment to which he pled guilty, he received child pornography from at least the middle of 2009, until the fall of 2015.

To find child pornography, Austin did not limit his search to the typical search engines (*e.g.*, Google, Yahoo Search, or Bing), but instead ventured into the "dark web" utilizing Tor software (a/k/a the Onion Router) searching for PTCH ("pre-teen hardcore"). He also admitted to using peer-to-peer sharing software, such as "Limewire" and "Bearshare" to access child pornography.

When agents searched Austin's bedroom, they found 8 thumbdrives containing child pornography. A forensic examination revealed that, all totaled, those drives contained 5,234 still images, and 346 videos, which, in Guideline parlance, translates to 31,180 images (346 X 75 =

25,950 + 5,230 = 31,180).  Some of the images were of girls as young as eight years of age, and, according to the National Center for Missing and Exploited Children as set forth in the Presentence Report, his collection depicted children from 23 different series.  More than 100 of the images depicted the rape of children, while 33 filed depicted the bondage of children.  Even if that sort of child pornography is easily found on the Internet, Austin made the conscious choice to download and retain it for future viewing.

Ever since United States v. Booker, 543 U.S. 220, 261-62 (2005), the Guidelines have been advisory.  Nevertheless, they "are not only the starting point for most federal sentencing proceedings but also the lodestar."  Molina-Martinez v. United States, 136 S. Ct. 1338, 1346 (2016).  "The Guidelines inform and instruct the district court's determination of an appropriate sentence."  Id. With the advisory guideline range of 97 to 121 months as the  "the starting point and the initial benchmark," and recognizing that  "a major departure should be supported by a more significant justification than a minor one," Gall v. United States, 552 U.S. 38, 49-50 (2007), the Court has nothing before it that would suggest a sentence below 60 months to be appropriate such that it should opt in favor of dismissing the receipt as opposed to possession count.

**IV.**

Because (1) Austin admitted in his guilty plea that he received child pornography; (2) DeCarlo states that the conviction for the lesser-included offense is to be vacated when dual convictions violate the Double Jeopardy Clause; (3) the overwhelming weight of authority confirms that lesser included offenses should be vacated in favor of the greater offense in such cases; (4) no unusual circumstances or compelling reasons have been shown that would require the Court not to follow the standard rule; and (5) it would be paradoxical to ignore that Austin pled guilty to both

13

receiving and possessing child pornography with the full understanding that his sentence would be at least five years, the Government's Motion to Dismiss Count Two will be granted. Sentencing will proceed on Count One of the Indictment.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE